IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**GABRIELLE SAKARI WASHINGTON**                                                **PLAINTIFF**

**VERSUS**                                        **CIVIL ACTION NO. 3:17cv290-CWR-RHW**

**NANCY A. BERRYHILL, ACTING**
**COMMISSIONER OF SOCIAL SECURITY**                                    **DEFENDANT**

## REPORT AND RECOMMENDATION

Counsel for Plaintiff Gabrielle Sakari Washington filed this action April 20, 2017, seeking judicial review of a decision denying Washington continued disability insurance benefits and supplemental security income (SSI) payments under Titles II and XVI of the Social Security Act. The issues presented for review are whether the Administrative Law Judge (ALJ) erred in obtaining consultative examinations before requesting information from Washington's medical sources; whether the ALJ failed to properly weigh the evidence from Washington's mental healthcare providers and DDS evaluators; whether the Appeals Council failed to evaluate new and material evidence Washington submitted on July 14, 2016 and December 22, 2016; and whether the ALJ erred in finding Washington worked until 2013, when the record states only that she worked until 2010 (the Commissioner's brief concedes this misstatement in the decision, but urges it was harmless).

### Facts and Procedural History

On June 20, 2011, Gabrielle Washington was awarded disability and SSI benefits as of August 1, 2009. Washington was age 24 at the alleged August 1, 2009 onset of disability. [8, p. 56] Disability was based on findings of severe impairments of migraine headaches, left ventricular dysfunction, major depressive disorder and generalized anxiety disorder. [8, pp. 25, 136] The 2011 order recommended a continuing disability review in 24 months. [8, p. 140]

Upon review on June 13, 2013, the Commissioner found Washington's condition had medically improved such that she was no longer disabled. [8, pp. 141-142, 145-146, 151-153] Washington requested a hearing. On October 30, 2015, ALJ Windell R. Owens heard the matter, receiving exhibits and hearing testimony from Washington and Vocational Expert Brenda White. The ALJ advised Washington of her right to have a representative present, the benefits of representation, and the availability of a continuance of the hearing should she desire to seek representation. Washington chose to waive her right to representation and proceed with the hearing. [8, pp. 50-52] On February 11, 2016, ALJ Owens issued a 19-page decision finding that Washington's disability ended as of June 30, 2013. [8, pp. 23-41]

Under the Social Security Act, the Commissioner may terminate benefits for disability if substantial evidence demonstrates there has been medical improvement in the impairment(s) related to the ability to work, and the individual is now able to engage in substantial gainful activity (SGA). 42 U.S.C. § 423(f)(1); *Griego v. Sullivan*, 940 F.2d 942, 943-944 (5th Cir. 1991). Determination of whether one continues to be disabled involves an eight-step evaluation process for Title II claims, and a seven-step process applies to Title XVI claims. 20 C.F.R. §§ 404.1594(f) and 416.994(b)(5). Except for the initial step on the Title II claim (whether claimant is performing substantial gainful activity), the steps for the two evaluation processes are the same, *i.e.*, whether claimant has an impairment or combination of impairments which meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; whether medical improvement (decrease in medical severity of the impairment established by improvement in symptoms, signs and/or laboratory findings) has occurred; whether medical improvement is related to ability to work (resulting in increase in claimant's capacity to perform basic work activities); whether an exception to medical improvement applies; whether current impairments are severe (significantly limit ability to do basic work activities); the claimant's

residual functional capacity based on current impairments and whether she can do past relevant work; and whether other work exists that claimant can perform. The ALJ used these evaluation processes in deciding Washington's claims.

The ALJ found that as of June 30, 2013, Washington had not engaged in substantial gainful activity. The ALJ erroneously stated Washington testified she had worked as a part-time cashier at Target from 2001-2013, when she actually testified she worked at that job from 2001-2010. However, the ALJ noted during the hearing that Washington had not performed any work since 2010, and he concluded "as a matter of fact that [her] earnings never constituted SGA (substantial gainful activity) work activity." [8, p. 57] The ALJ's decision found Washington had no past relevant work, and that her part-time work at Target "did not rise to the level of substantial gainful activity." [8, p. 40] There is no issue before this Court regarding SGA.

At the next two steps of the evaluation, the ALJ found Washington's current severe impairments established by the medical evidence are "non-ischemic cardiomyopathy with history of left ventricular dysfunction, occipital neuralgia with headache, history of asthma with mild pulmonary obstruction, diffuse arthralgia without evidence of significant bony abnormality,[1] sciatica, obesity and an adjustment disorder with anxiety and depression." The ALJ found these impairments did not meet or medically equal the severity of a listed impairment, specifically considering Listings 1.02 (major dysfunction of a joint(s), 3.03 asthma, 12.04 affective disorders and 12.06 anxiety-related disorders. [8, pp. 25-26]

The ALJ found there had been a decrease in medical severity of Washington's impairments, and that, as of June 30, 2013, she had the residual functional capacity to perform sedentary work with the following exceptions: avoid extremes of heat/cold and even moderate exposure to pulmonary irritants; no work from unprotected heights; occasional fine fingering

---

[1]This encompasses Washington's complaints of fibromyalgia and right carpal tunnel syndrome. [8, p. 26]

with bilateral upper extremities; occasional stooping, kneeling, crouching, crawling, climbing stairs and ramps; no climbing ropes, ladders or scaffolds; can perform routine repetitive to detailed tasks but no complex tasks; occasional changes in the work setting; and no production rate pace work.  [8, p. 5]  Vocational Expert Brenda White testified there are available jobs in the national economy which fall within the above limitations.  [8, pp. 87-89]  The Appeals Council denied review February 14, 2017, which led to the filing of this action.  [8, pp. 5-8]

Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  The Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision.  *Villa*, 895 F.2d at 1022.  Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court, nor may the Court not try the issues *de novo*, substitute its judgment for that of the Commissioner, or re-weigh the evidence.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995; *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Harris*, 209 F.3d at 417 (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (a finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision).  Factual findings

supported by substantial record evidence are conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may reverse a decision of the Commissioner if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984). Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the administrative decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The decision of the Commissioner is accorded great deference and "will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the ... decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

## Discussion

Washington first urges the ALJ erred in obtaining consultative examinations before obtaining all her treatment records, citing as authority 20 C.F.R. § 404.1512(e). The cited regulation does not mandate the sequence and timing of obtaining evidence; it simply provides the general procedure, and states consultative examination evidence is not evaluated until the Commission has "made every reasonable effort to obtain evidence from" the claimant's medical sources. Washington has identified no evidence showing the ALJ *evaluated* the consultative examinations before considering the treatment records, nor has she shown any prejudice resulting from the order in which the ALJ obtained the evidence to develop the record. Washington's argument that the ALJ "affirmed" the June 2013 determination of "not disabled"

before requesting evidence from Washington's own medical sources is belied by the record,[2] and the ALJ's thorough discussion of the evidence, including Plaintiff's treatment records. Unlike the Court, the ALJ's function is not an appellate one; the ALJ conducts a *de novo* hearing of the matter, as was done in Washington's case. The ALJ plainly stated before the hearing began that:

> This case comes to me anew, meaning I'm not bound by any prior determination of the Agency. I'm an independent arbitrator, my job is to look at the evidence, consider it along with testimony, any factual legal arguments, as well as the testimony of the vocational expert, and render a new decision.

[8, pp. 49-50] His decision states his findings are based upon his review of "all of the evidence of record," which includes Washington's records from Region 8 Mental Health through November 4, 2015. [8, pp. 23, 703-729][3] The Court has been presented nothing to show the ALJ failed to review and consider all the evidence, and the undersigned finds no merit in this assignment of error.

Washington next complains of the weight the ALJ assigned to particular evidence and opinions. For instance, Washington contends the ALJ gave too little weight to a four-page Functional Data form [8, pp. 465-468], and too much weight to the opinions of consultative examiners W. Criss Lott, Ph.D and David Powers. [8, pp. 410-415][4] The ALJ stated he gave little weight to the opinions in the form because (1) it cannot be ascertained who signed the form

---

[2]The record in this case is over 800 pages long.

[3]These records document six visits from October 14, 2014 - November 4, 2015, which show Plaintiff's treatment at Region 8 consisted largely of prescribing, adjusting and monitoring medications for her anxiety disorder. On at least three of these visits she reported her medications were working well, and the last visit indicates she was improving with treatment. The documents contain no opinion that she is unable to work. [8, pp. 718, 726, 707-708]

[4]By the time Dr. Lott evaluated her in April 2013, Washington had earned an Associate's Degree and was only a few classes away from graduating from American Public University. From a mental health standpoint, Dr. Lott opined that she was capable of performing routine, repetitive activities and interacting with others in a competitive work environment "if she so chooses." Washington told Dr. Lott she assisted with light household chores, cooking and cleaning, attended church twice monthly, went out to eat with family, and spent most of her days watching television and playing with her cat and dog.

and what, if any, treating relationship the signer had with Washington;[5] (2) no clinical findings are indicated as a supporting basis for the assessment; and (3) the assessment is inconsistent with the other mental health records including GAFs,[6] diagnostic assessments, clinical mental status evaluations, claimant's reports, and the findings on the psychological consultative examination. Washington argues it was the ALJ's duty to ferret out the identity and treating relationship, if any, of the form's signer. While the undersigned is unpersuaded by that argument, even if it were accepted, that would do nothing to resolve the lack of clinical findings supporting the form opinions, or their inconsistency with other mental health records and evidence. A treating physician's opinion on the nature and severity of a claimant's impairment "will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence,'" but determination of disability is for the ALJ, and he may properly discount an opinion unsupported by medically acceptable clinical, laboratory or diagnostic techniques. *Newton v. Apfel*, 209 F.3d 448, 455-456 (5th Cir. 2000) (citing 20 C.F.R. § 404.1527(d)(2)); *Martinez v. Chater*, 64 F.3d at 176. An ALJ may discount a treating physician's opinion if it is conclusory, or without objective medical evidence supporting it, or if it is otherwise unsupported by the record or inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c); *Perez*, 415 F.3d at 465-66. Approximately half of the nineteen single-spaced pages of the administrative decision consist of the ALJ's painstaking examination of the medical evidence pertaining to Washington's claimed disabling conditions, treatment and associated functional limitations. Having carefully reviewed the record, the undersigned finds nothing untoward in the ALJ's summarization of the evidence

---

[5]The ALJ noted the signature is neither that of Washington's intake counselor nor the nurse practitioner [8, p. 39] in other Region 8 Mental Health records. [8, pp. 447-461]

[6]Global Assessments of Functioning.

in the case. In addition, the ALJ plainly stated in his decision, "Greater weight is given to the treating physicians, generally, except [the Functional Data form]," and the undersigned finds the ALJ adequately explained his reasoning for affording the form little weight. It bears repeating that it is the ALJ who is authorized to weigh the evidence, not the Court. *Garcia v. Colvin*, 622 F.App'x 405, 408-409 (5th Cir. 2015); *Fontenot v. Colvin*, 661 F.App'x 274, 277 (5th Cir. 2016) ("any evaluation of the accuracy of the [ALJ's] analysis [of the doctor's reports] is beyond the scope of this court's review.").

Washington's third asserted error is that the Appeals Council failed to accept additional medical records she submitted after the ALJ rendered his decision. The Appeals Council reviewed and found immaterial Plaintiff's proffered evidence which post-dates the ALJ's decision. [10-1, pp. 41, 51] Plaintiff contends such evidence tends to prove the consistency of her Region 8 Mental Health treatment records. [10, p. 26] Applicable regulations state that the Appeals Council will only consider new and material evidence if it relates to the period on or before the date of the ALJ's decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision. 20 C.F.R. §§ 404.970(a)(5) and (b); 20 C.F.R. §§ 416.1470(a)(5) and (b). Of the approximately 70 pages Plaintiff attached to her brief, the vast majority are duplicates of documents from the record upon which the ALJ's decision was based [10-1, pp. 3-9, 27-40, 44, 47-50, 52-70]; others are briefs (not evidence) filed by Plaintiff's lawyer during the administrative proceedings [10-1, pp. 10-26], a copy of a court case indicating positions held by employees of Region 8 in 2008 [10-1, pp. 42-43], and income tax records of Plaintiff's mother for the years 2011 and 2012 (during the period when Plaintiff was found disabled and for which she was paid benefits) [10-1, pp. 45-46]. Considering the nature of the documents, it is understandable why the Appeals Council found them immaterial. In any

event, this Court's review of the administrative decision is limited to the record upon which the Commission decided the case. The undersigned finds no merit to this assignment of error.

Finally, Washington presents a three-sentence assertion that the ALJ erred in finding she was employed until 2013, when the record shows that she worked only until 2010. She cites no authority and provides nothing to show any prejudice arising from this mistake. The Commissioner concedes the mistake, but urges, absent a showing of prejudice, an error is harmless and does not warrant reversal. *Graves v. Colvin*, 837 F.3d 589, 593 (5th Cir. 2016). The undersigned finds no reversible error in the misstatement by the ALJ.

## RECOMMENDATION

In accordance with the foregoing, the undersigned recommends that the decision of the Commissioner of Social Security be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

A party has 14 days after service of a copy of this Report and Recommendation to serve and file with the Clerk any written objections to it. *L.U.Civ.R.* 72(a)(3). An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections. Responses to objections must be filed within seven days after service, or the opposing party must notify the District Judge that he does not intend to respond. One who fails to timely file written objections is barred, except on grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed this the 8th day of June, 2018.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE